UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH T. CALVO,                          :
                                          :
              Plaintiff                   :        No. 4:11-CV-00632
                                          :
        vs.                               :        (Judge Nealon)
                                          :
MICHAEL J. ASTRUE,                        :
COMMISSIONER OF SOCIAL                    :
SECURITY,                                 :
                                          :
              Defendant                   :

                    MEMORANDUM

FILED
SCRANTON

NOV 1 4 2012

Per_____
        DEPUTY CLERK

## BACKGROUND

        The above-captioned action is one seeking review of a decision of the Commissioner of

Social Security ("Commissioner") denying Plaintiff Joseph T. Calvo's claim for social security

disability insurance benefits.

        Calvo filed an Application for Social Security Disability Insurance Benefits on February

20, 2007, alleging disability beginning February 6, 2007. Tr. 122.[1]  The application was initially

disapproved by the Bureau of Disability Determination[2] on October 12, 2007. Tr. 11 & 122-129.

On November 21, 2007, Calvo requested a hearing before an administrative law judge. Tr. 132-

133.  A hearing was held before administrative law judge, Sridhar Boini, on February 6, 2009.

Tr. 29, 37-89.  On May 11, 2009, the administrative law judge issued a decision denying Calvo's

_____

1. References to "Tr._" are to pages of the administrative record filed by the Defendant as part of
the Answer on June 8, 2011.  (Doc. 9).

2. The Bureau of Disability Determination is an agency of the state which initially evaluates
applications for disability insurance benefits on behalf of the Social Security Administration.  Tr.
77.

application. Tr. 26-35. On May 13, 2009, Calvo filed a request for review which was denied by

the Appeals Council on March 10, 2011. Tr. 1-6 & 22-25. Thus, the administrative law judge's

decision stood as the final decision of the Commissioner.

Calvo then filed a complaint in this Court on April 5, 2011. (Doc. 1). On June 8, 2011,

Defendant filed an answer and transcript of the entire record of proceedings. (Docs. 8 & 9).

Supporting and opposing briefs were submitted and the appeal[3] became ripe for disposition on

April 6, 2012. (Docs. 35 & 36).

Calvo is a sixty-four (64) year old male, born on May 22, 1948[4], with a twelfth grade

education. Calvo has past relevant work experience[5] as a mailroom worker (medium duty, semi-

skilled), forklift operator (medium duty, unskilled), delivery truck driver (medium duty, semi-

skilled), and porter (heavy duty, unskilled).[6] Tr. 81-82. On February 6, 2007, Calvo was injured

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

4. At the time of the administrative hearing and the administrative law judge's decision, Calvo was sixty (60) years of age. Tr. 81. Calvo is considered a "person of advanced age" whose age significantly affects his ability to adjust to other work. 20 C.F.R. § 404.1563(e).

5. Past relevant employment in the present case means work performed by Calvo during the fifteen (15) years prior to the date his claim for disability was adjudicated by the Commissioner. See 20 C.F.R. §§ 404.1560 and 404.1565.

6. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

at work when he slipped and fell on ice, landing on his upper back and hitting his head.  Tr. 53,

58-59.  Calvo had surgery, a cervical fusion, on February 10, 2007.  Tr. 55.

Disability insurance benefits are paid to an individual if that individual is disabled and

"insured," that is, the individual has worked long enough and paid social security taxes.  The last

date that a claimant meets the requirements of being insured is commonly referred to as the "date

walking and standing are required occasionally and other
sedentary criteria are met.

(b) *Light work.*  Light work involves lifting no more
than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds.  Even
though the weight lifted may be very little, a job is
in this category when it requires a good deal of
walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg
controls.  To be considered capable of performing a
full or wide range of light work, you must have the
ability to do substantially all of these activities.
If someone can do light work, we determine that he or
she can also do sedentary work, unless there are
additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

(c) *Medium work.*  Medium work involves lifting no more
than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If
someone can do medium work, we determine that he or she
can do sedentary and light work.

(d) *Heavy work.*  Heavy work involves lifting no more
than 100 pounds at a time with frequent lifting or
carrying of objects weighing up to 50 pounds. If
someone can do heavy work, we determine that he or she
can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567.

3

last insured." It is undisputed that Calvo meets the insured status requirements of the Social Security Act through December 31, 2012. Tr. 31.

Calvo claims that he became disabled on February 6, 2007, from cervical myelopathy, ankylosing spondylitis, and status post cervical vertebrectomy and spinal and neck surgery. (Doc. 35, pp. 1-2, citing Tr. 32 & 125). Calvo has not worked since the accident on February 6, 2007 and has been receiving Workers' Compensation benefits of $800.00 every two (2) weeks since five (5) weeks after the accident. Tr. 31-32 & 60, and (Doc. 35, p. 6).

For the reasons set forth below, the decision of the Commissioner denying Calvo's application for disability insurance benefits will be reversed and the matter will be remanded to the Commissioner.

## STANDARD OF REVIEW AND SEQUENTIAL EVALUATION PROCESS

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence. Counsel for the parties are familiar with the five-step sequential evaluation process that the Commissioner utilizes and the substantial evidence standard of review.[7]

---

7. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

4

## MEDICAL RECORDS AND OTHER EVIDENCE

Before the administrative law judge's decision and the arguments of counsel are

analyzed, Calvo's activities and medical records will be reviewed.

Following the accident, Plaintiff was admitted to the Franklin Hospital in Valley Stream,

New York on February 6, 2007 at 11:02 a.m. Tr. 234.  On February 7, 2007, an MRI of Calvo's

cervical spine was performed which indicated herniation of C2-3, C3-4 and C4-5, most severe at

C3-C-4 with cervical spinal cord compression and contusion. Tr. 231-233 & 236.  Calvo

complained of back, neck and shoulder pain and hand numbness and weakness and was

diagnosed with cervical myelopathy, spine contusion, and anterior osteophytes, consistent with

ankylosing spondylitis. Tr. 235 & 241.  He was given pain medication, was started on steroid

analgesics, and was given a hard collar to be worn at all times. Tr. 236, 241, & 247.

------

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. § 404.1520; Poulos v. Commissioner of Social Security, 474 F.3d 88, 91-92 (3d Cir. 2007).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.

On February 10, 2007, Calvo underwent a decompression surgery performed by Sebastian Lattuga, M.D.  Tr. 237-240.  Dr. Lattuga conducted: an anterior cervical vertebrectomy at C4; an anterior cervical hemi-vertebrectomy at C3 and C5; structural implant; arthrodesis C3,4,5; anterior instrumentation, anterior osteotomy 3/4/5; and local bone graft for spine.  Tr. 237.  Dr. Lattuga's postoperative diagnosis noted severe ankylosing spondylitis.  Tr. 237.  A post-operative CT Scan of the cervical spine showed no evidence of fracture or dislocation, that disc herniation is no longer observed, no hemorrhage and the orthopedic hardware is in good position.  Tr. 273 & 276.

Calvo was started on physical therapy and was able to be discharged from the hospital on February 15, 2007.  Tr. 236.  For six weeks following the surgery, Calvo had physical therapy twice a week.  Tr. 288.

On March 2, 2007, Calvo saw Dr. Lattuga for a postoperative check-up.  Tr. 315.  Dr. Lattuga noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities.  Tr. 315. Dr. Lattuga commented that Calvo is doing "excellent" but had a superficial wound infection and prescribed Cipro and Keflex.  Tr. 316.  Dr. Lattuga recommended physical and occupational therapy and that Calvo refrain from activities that exacerbate his symptoms such as heavy lifting or carrying and bending.  Tr. 316.  Following the examination, Dr. Lattuga completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury.  Tr. 318.

6

On March 9, 2007, Calvo saw Dr. Lattuga for a postoperative check-up. Tr. 312. Dr. Lattuga noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 312. Dr. Lattuga recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending and that Calvo continue to take medications as needed. Tr. 313. Following the examination, Dr. Lattuga completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 314.

On March 29, 2007, Calvo saw Dr. Lattuga for a postoperative check-up. Tr. 309. Calvo rated his severity of pain as three (3) out of ten (10). Tr. 309. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 309. Dr. Lattuga again recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending and that Calvo continue to take medications as needed. Tr. 310. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 311.

On April 23, 2007, Calvo was referred by the Division of Disability Determination to Linell Skeene, M.D., at Industrial Medicine Associates, P.C. in Hempstead, New York. Tr. 288 & 291. Dr. Skeene noted a wound infection at the fusion site and that Calvo described throbbing and constant neck pain with seven (7) out of ten (10) intensity radiating to the left elbow and

7

intermittent numbness on all ten (10) fingers. Tr. 288. Dr. Skeene also noted that the neck pain

was aggravated by reaching and lifting greater than five (5) pounds and that Calvo was able to

shower and dress independently and could do limited cooking but no cleaning, laundry or

shopping. Tr. 288-289. Dr. Skeene noted that Calvo appeared to be in no acute distress but

wears a "Philadelphia collar" twenty-four (24) hours a day. Tr. 289. Dr. Skeen opined that

Calvo had a full range of motion in the upper and lower extremities and Calvo has "moderate

limitation for reaching and heavy lifting." Tr. 289-290.

On May 10, 2007, Calvo saw Dr. Lattuga for a three-month postoperative check-up. Tr.

306. At this visit, Calvo rated his severity of pain as three (3) out of ten (10). Tr. 306. Dr.

Lattuga noted tenderness and spasms upon palpation and a restricted range of motion in the

cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 306.

Dr. Luttuga requested that a CT scan be taken. Tr. 307. Dr. Lattuga recommended continuing

physical and occupational therapy and refraining from activities that exacerbate Calvo's

symptoms such as heavy lifting or carrying and bending and that Calvo continue to take

medications as needed. Tr. 307. Following the examination, Dr. Lattuga again completed a State

of New York Workers' Compensation Board form and indicated that Calvo cannot do any type

of work due to his work injury. Tr. 308.

On May 16, 2007, Calvo had a CT Scan of the Cervical Spine taken which showed that

the disc spaces from C3 through C5 did not appear completely fused following the surgery and

that there is osteophyte formation with bony bridging between the vertebral bodies from C5

through C7. Tr. 320.

On May 24, 2007, Calvo saw Dr. Lattuga for a postoperative check-up. Tr. 303. Dr. Lattuga noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 303. Dr. Lattuga recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending and that Calvo continue to take medications as needed. Tr. 304. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 302.

On June 11, 2007, Calvo started physical therapy at St. Luke's Sports & Rehabilitation in Jim Thorpe, PA. Tr. 322-348. Upon his initial cervical spine evaluation, Calvo's cervical range of motion was ninety (90) percent and shoulder range of motion was twenty-five (25) percent and his strength for said areas was three (3) out of five (5). Tr. 323. His work restrictions were listed as severe. Tr. 322. Calvo was "very motivated" to improve through physical therapy and it was recommended he continue physical therapy three (3) times a week for four (4) weeks. Tr. 326. Dr. Lattuga agreed issuing a prescription for the physical therapy. Tr. 327. Calvo attended physical therapy over thirty (30) times from June to August of 2007 (June 11, 12, 14, 18, 20, 21, 26, 28, 29, July 2, 3, 5, 11, 12, 13, 18, 19, 20, 25, 26, 27, 31, August 1, 2, 8, 9, 10, 14, 15, 21, 22, 23, 28, of 2007). Tr. 329-333. While his progress notes throughout these visits indicate improvement, Calvo's last progress note on August 28, 2007, indicated continued very limited cervical range of motion and that Calvo continued to complain of neck cracking, stiffness and tightness and numbness in the hands. Tr. 334-348.

On June 29, 2007, a physical residual functional capacity assessment was conducted by T. Grazia. Tr. 291-296. However, the assessment forms were entered into the record but were not filled out. Tr. 291-296.

On July 9, 2007, Calvo saw Dr. Lattuga for his five (5) month postoperative exam. Tr. 300. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 300. Dr. Lattuga again recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 301. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 302.

On August 20, 2007, Calvo saw Dr. Lattuga for his six (6) month postoperative exam. Tr. 297. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 297. Dr. Lattuga again recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 298. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 299.

On October 1, 2007, Calvo saw Dr. Lattuga for his eight (8) month postoperative exam. Tr. 350. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of

motion in the cervical spine and noted normal range of motion in the upper and lower

extremities. Tr. 350. Dr. Lattuga again recommended continued physical and occupational

therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or

carrying and bending. Tr. 357. Following the examination, Dr. Lattuga again completed a State

of New York Workers' Compensation Board form and indicated that Calvo cannot do any type

of work due to his work injury. Tr. 358.

On October 5, 2007, Anne C. Zaydon, M.D., performed a physical residual functional

capacity assessment of Calvo. Tr. 349-355. Dr. Zaydon determined that "the medical evidence

establishes a medically determinable impairment of Cervical Myelopathy/Ankylosing

Spondylitis" and that Calvo could occasionally lift up to twenty (20) pounds and frequently lift

up to ten (10) pounds, could occasionally climb, stoop and kneel but could never crouch or crawl.

Tr. 350-351, & 354. Dr. Zaydon, in addition to physically examining Calvo, reviewed the April

2007 report of Dr. Skeene and the July 2007 report of Dr. Lattuga and adopted and gave Dr.

Lattuga's report controlling weight. Tr. 354-355.

On November 21, 2007, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 359. Dr.

Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the

cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 359.

Dr. Lattuga again recommended continued physical and occupational therapy and refraining from

activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr.

360. Following the examination, Dr. Lattuga again completed a State of New York Workers'

11

Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 361.

On January 2, 2008, Calvo saw Dr. Lattuga for his eleven (11) month postoperative exam. Tr. 362. At this visit, Dr. Lattuga concluded that Calvo has a permanent partial moderate disability. Tr. 363. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 362. Dr. Lattuga again recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 363. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 364.

On February 15, 2008, Calvo saw Dr. Lattuga for his one (1) year postoperative exam. Tr. 365. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 365. Dr. Lattuga again recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 366. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 367.

12

On May 19, 2008, Calvo saw Dr. Lattuga for a follow-up exam and Calvo reported a "pop" in his neck and arm. Tr. 368. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 368. Dr. Lattuga requested that the worker's compensation board approve continued physical and occupational therapy and advised Calvo to refrain from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 369. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 370.

On July 14, 2008, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 371. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 371. Dr. Lattuga again recommended continued physical and occupational therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 372. Dr. Lattuga reviewed treatment options with Calvo who elected to proceed with massage therapy which Dr. Lattuga concluded was medically necessary. Tr. 372. Following the examination, Dr. Lattuga again completed a State of New York Workers' Compensation Board form and indicated that Calvo cannot do any type of work due to his work injury. Tr. 373.

On August 7, 2008, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 374. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical

13

spine and noted normal range of motion in the upper and lower extremities. Tr. 374. Dr. Lattuga

requested approval from the workers' compensation board for massage therapy and

recommended Calvo refrain from activities that exacerbate Calvo's symptoms such as heavy

lifting or carrying and bending. Tr. 375. Following the examination, Dr. Lattuga again

completed a State of New York Workers' Compensation Board form and indicated that Calvo

cannot do any type of work due to his work injury. Tr. 376.

On September 22, 2008, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 377. Dr.

Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the

cervical spine and noted normal range of motion in the upper and lower extremities. Tr. 377.

Dr. Lattuga again requested approval for massage therapy and recommended refraining from

activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr.

378. Following the examination, Dr. Lattuga again completed a State of New York Workers'

Compensation Board form and indicated that Calvo cannot do any type of work due to his work

injury. Tr. 379.

On October 27, 2008, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 380. Dr. Lattuga

again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical

spine and noted normal range of motion in the upper and lower extremities. Tr. 380. Dr. Lattuga

again requested approval for massage therapy and recommended refraining from activities that

exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 381. Dr.

Lattuga continued to conclude that Calvo has a permanent partial moderate disability. Tr. 381.

On March 2, 2009, Dr. Lattuga completed a neck medical source statement assessment. Tr. 382-384. Dr. Lattuga concluded that Calvo can occasionally lift one (1) to five (5) pounds, can rarely or never move his neck, and can sit for up to two (2) hours straight but never more than four (4) hours in a day. Tr. 382-384.

The following medical evidence was not considered by the administrative law judge in the May 11, 2009 decision but was entered into evidence before the Appeals Council denied Calvo's request for review on March 10, 2011. Tr. 385.

On October 12, 2009, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 388. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and noted range of motion in the upper and lower extremities are **not** within normal limits upon inspection. Tr. 388 (emphasis added). Dr. Lattuga again requested approval for massage therapy and recommended refraining from any activity that exacerbates Calvo's symptoms. Tr. 389. Dr. Lattuga continued to conclude that Calvo has a permanent partial moderate disability and concluded that Calvo is "totally disabled from his regular occupation." Tr. 389.

On December 23, 2009, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 386 & 392. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and the upper and lower extremities are not within normal limits upon inspection. Tr. 386 & 392. Dr. Lattuga again requested approval for massage therapy and recommended refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 387 & 393. Dr. Lattuga continued to conclude that Calvo has a

15

permanent partial moderate disability and that Calvo is "totally disabled from his regular occupation." Tr. 387 & 393.

On March 8, 2010, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 390 & 394. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and the upper and lower extremities are not within normal limits upon inspection. Tr. 390 & 394. Dr. Lattuga again requested approval for massage therapy and recommended refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 391 & 395. Dr. Lattuga continued to conclude that Calvo has a permanent partial moderate disability and that Calvo is "totally disabled from his regular occupation." Tr. 391 & 395.

On October 29, 2010, Calvo saw Dr. Lattuga for a follow-up exam. Tr. 396. Dr. Lattuga again noted tenderness and spasms upon palpation and a restricted range of motion in the cervical spine and the upper and lower extremities are not within normal limits upon inspection. Tr. 396. Dr. Lattuga again recommended continued physical therapy and refraining from activities that exacerbate Calvo's symptoms such as heavy lifting or carrying and bending. Tr. 397. Dr. Lattuga continued to conclude that Calvo has a permanent partial moderate disability and that Calvo is "totally disabled from his regular occupation." Tr. 397.

At the administrative law judge hearing on February 6, 2009, Calvo testified that he fell at work on February 6, 2007 injuring his upper back and neck requiring surgery, a cervical fusion, and that he has been unable to work since the accident. Tr. 43, 53, 55. He stated he receives

$800 in worker's compensation every two weeks. Tr. 60. Calvo further testified that he walked with a cane and wore a neck brace for six (6) months following the surgery, first a hard collar then a soft collar, and was unable to go to the bathroom or get out of bed by himself. Tr. 56, 64, 74. Calvo stated that he was doing physical therapy but that was stopped as he was informed that there was nothing else they could do for him. Tr. 46. He stated that he still has a lot of pain in his neck, he cannot turn to the left, he cannot sit for long, cannot walk like he did prior to the accident, and has numbness and tingling in his fingers and his jaw. Tr. 43, 44, 48. He is unable to do things around his residence such as cut the grass. Tr. 64-65. He sees his surgeon, Dr. Lattuga, approximately every eight (8) weeks for follow-up visits and Calvo takes Vicodin to manage his pain. Tr. 43, 45, 46. Calvo also testified that he is having lower back pain due to the fall at work. Upon questioning, Calvo answered that he is able to drive short distances and do simple chores around his house but has trouble getting dressed, particularly putting on his socks and shoes as it is difficult to bend over, and he has a friend take out his trash. Tr. 69, 73. Calvo has trouble walking and becomes out of breath more frequently and gets a lot of headaches since the accident for which he takes Excedrin. Tr. 72. Calvo enjoys sports but is unable to play them anymore; he can throw a ball with his grandson but is unable to pick him up and cannot throw a ball like he used to. Tr. 75-76, 78. With regard to what he can lift, Calvo stated he can lift a gallon of milk and light grocery bags but can no longer lift and move the cases of wine at work. Tr. 77, 79. Calvo further testified that his mobility is a big issue as he can no longer jump off the truck and move around and could never do his job again. Tr. 80.

17

**DISCUSSION**

The administrative law judge held, and both parties concur, that Calvo meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful employment since the accident on February 6, 2007. Tr. 31. The administrative law judge found that Calvo had the following severe impairments: "cervical myelopathy, ankylosing spondylitis, and status post cervical vertebrectomy." Tr. 32. The administrative law judge specifically noted that "[t]he impairments have more than a de minimis effect on the claimant's ability to perform basic work activities" and "are 'severe' as defined in SSR 85-28."[8] Id. However, the administrative law judge determined that Calvo does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, and that Calvo "has the residual functional capacity to perform the a (sic) range of medium work in that he can lift 50 lbs occasionally and 25 frequently, can engage in unlimited walking, but should be required to subject his neck to constant movement to the right, climb ladders scaffolds or ropes on a limited basis, can crouch, kneel crawl, and can read and write appropriately, but can only do limited pushing or pulling with the upper extremities as defined in 20 CFR 404.1567(c)." Tr. 32.

---

8. An impairment is "severe" if it significantly limits an individuals' ability to perform basic work activities. 20 C.F.R. §§ 404.1521 and 416.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

In setting this residual functional capacity, the administrative law judge noted that Calvo had considerable difficulty explaining any significant daily limitations stating that his most significant limitation was difficulty with putting on shoes and socks, and the administrative law judge determined that Calvo "did not appear to credibly indicate limitations commensurate with the medical impairments." Tr. 33. The administrative law judge relied on the opinion of the consultative examiner, Dr. Linell Skeene, who noted moderate limitations for reaching and heavy lifting. Tr. 33. Also in making this residual functional capacity, the administrative law judge relied on the treatment notes of Calvo's treating physician, Dr. Sebastian Lattuga ,who encouraged Calvo to avoid activities that would exacerbate his symptoms such as heavy lifting, but the administrative law judge disregarded and discredited Dr. Lattuga's medical source statement which contained significant, specific limitations to Calvo's working abilities. Tr. 33. Further, the administrative law judge discredited the conclusion of the state agency consultant, Dr. Anne Zaydon, that Calvo's exertional work capability is light, noting that her conclusion is supported by inadequate limitations. Tr. 34.

Based on his determination of Calvo's residual functional capacity and the testimony of the vocational expert, the administrative law judge, at step four (4) of the sequential evaluation process, concluded that Calvo could perform the past relevant unskilled, medium exertional level work as a forklift operator, and accordingly, that Calvo is not disabled under the Social Security Act. Tr. 35.

In his brief, Calvo makes multiple arguments as to how the administrative law judge incorrectly handled his disability determination.  Doc. 35, pp. 10-28.  Calvo argues that the administrative law judge erred:

> (1) by relying upon the vocational expert's testimony, his own opinion and conclusions, and Calvo's testimony, when there was overwhelming evidence to the contrary in the record including the opinions of treating physician, Dr. Lattuga, the consultative examiner Dr. Skeene, and the state agency consultant, Dr. Zaydon;

> (2) in his residual functional capacity determination, in his finding that Calvo could perform his past relevant work as a fork lift operator, and in failing to apply the appropriate Medical Vocational Guidelines;

> (3) in failing to attribute substantial credibility to the testimony of Calvo regarding his work capabilities due to his significant work history; and

> (4) in failing to accord proper weight to Calvo's receipt of Workers' Compensation benefits.

Doc. 35, pp. 10-28.  After a review of the entire record, the above arguments, and the Defendant's response brief, it is determined that the administrative law judge's residual functional capacity determination is not supported by substantial evidence, and accordingly, the matter will be remanded.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Grogan v. Comm'r of Soc. Sec., 459 Fed. Appx. 132, 137 (3d Cir. 2012) citing Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

"However, '[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" Grogan, 459 Fed. Appx. at 137, citing Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). "A treating physician's opinion on the nature and severity of a claimant's impairment is only given controlling weight when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record.'" Grogan, 459 Fed. Appx. at 137, citing Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)).

The administrative law judge determined that Calvo's residual functional capacity is medium work in that he can lift fifty (50) pounds occasionally and twenty-five (25) pounds frequently and can engage in unlimited walking. Tr. 32. A review of the records and the opinions contained therein demonstrates that this conclusion is not supported by substantial evidence. The following medical opinions regarding Calvo's occupational capabilities are found in the record:

- On April 23, 2007, approximately a month and a half after surgery, Dr. Skeene noted that Calvo's neck pain was aggravated by lifting greater than five (5) pounds and Calvo has "moderate limitation for reaching and heavy lifting." Tr. 288-290.

- On October 5, 2007, Dr. Zaydon opined that Calvo suffers from the impairment of Cervical Myelopathy/Ankylosing Spondylitis and could occasionally lift up to twenty (20) pounds and frequently lift up to ten (10) pounds. Tr. 350-354. Dr. Zaydon gave controlling weight to Dr. Luttuga's opinion over Dr. Skeene's. Tr. 354-355.

- Dr. Lattuga, Calvo's treating physician, opined that Calvo has a permanent partial moderate disability, repeatedly and consistently determined that Calvo cannot return to

21

work, and stated that Calvo is "totally disabled from his regular occupation." Tr. 379, 381, 387, 393. On March 2, 2009, Dr. Lattuga opined that Calvo <u>could occasionally (less than 1/3 of an 8 hour day) lift one (1) to five (5) pounds, could rarely or never lift greater than five (5) pounds, could rarely or never move his neck, and could sit up to two (2) hours straight but never more than four (4) hours in a day.</u> Tr. 382-384 (emphasis added).

In reaching the conclusion that Calvo can perform "medium work," lifting fifty (50) pounds occasionally and twenty-five (25) pounds frequently and can engage in unlimited walking, the administrative law judge, and the Defendant in his brief, primarily rely on the treatment note of Dr. Lattuga limiting Calvo to no "heavy lifting." <u>See</u> (Doc. 36, p. 17) and Tr. 32 and 34. This is based on the suggestion seen in Dr. Lattuga's medical notes that Calvo should refrain from activities that exacerbate his symptoms such as heavy lifting or carrying and bending. <u>See</u>, <u>e.g.</u>, Tr. 391. However, this recommendation is not an ultimate opinion on Calvo's ability to work but is merely a note for purposes of treatment. The United States Third Circuit Court of Appeals has acknowledged the distinction between a doctor's notes for purposes of treatment and a doctor's ultimate opinion on a claimant's work ability. <u>See</u> <u>Brownawell v. Comm'r of Soc. Sec.</u>, 554 F.3d 352, 357 (3d Cir. 2008) citing <u>Morales v. Apfel</u>, 225 F.3d 310, 319 (3d Cir. 2000). In accordance with that distinction, it is determined that this repetitive suggestion to avoid heavy lifting, in view of the medical source statement and Dr. Lattuga's continued workers' compensation reports refusing to release Calvo to any work, is merely a treatment note reminding Calvo not to do any heavy lifting around the house. It is not an opinion on Calvo's functional capacity. Further, it is determined that the treatment note is not inconsistent with the medical source statement or Dr. Lattuga' s other findings and opinions.

Interestingly, the administrative law judge noted that Dr. Lattuga, in these notes, "does not specifically define what heavy lifting means in terms of weight ranges." Instead of relying on the findings in the medical source statement which contains specific limitations with weight ranges, the administrative law judge inferred that Dr. Lattuga means weights in excess of fifty (50) pounds. Tr. 33. Such an inference from this form language in Dr. Lattuga's treating notes is incorrect and certainly not supported by substantial evidence given the medical source statement. In that March 2, 2009 report, Dr. Lattuga opined that Calvo could occasionally (less than 1/3 of an 8 hour day) lift one (1) to five (5) pounds, could rarely or never lift greater than five (5) pounds, could rarely or never move his neck, and could sit up to two (2) hours straight but never more than four (4) hours in a day. Tr. 382-384. This report also indicated that Calvo's condition existed and persisted with those restrictions since February 6, 2007. Tr. 384. Instead of citing this evidence, which clearly defines by specific weights and time periods Calvo's lifting capabilities, the administrative law judge "inferred" that Dr. Lattuga's advice to avoid heavy lifting or carrying and bending to mean that Dr. Lattuga cleared Calvo to lift weights up to fifty (50) pounds. Tr. 33. Such an inference is not supported by the rest of the medical record. Rather, the conclusion of Dr. Lattuga, Calvo's treating physician, contained in the medical source statement is supported by Dr. Lattuga's continued findings and treatment notes, the physical complaints and range of motions findings in the physical therapy notes, and the opinions of the other medical experts contained in the record.

23

It should also be noted that in rejecting Dr. Lattuga's conclusions in the medical source statement, the administrative law judge determined that "Dr. Lattuga's wording was for the purposes of pursuing a worker's compensation claim." Tr. 34. However, "the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the workers' compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984).

Additionally, the administrative law judge's functional capacity determination is not supported by the entire medical record, the opinion of the treating physician, or the opinions of the other medical experts, Dr. Skeene and Dr. Zaydon. Specifically, the administrative law judge erred by concluding that Calvo can lift fifty (50) pounds occasionally and twenty-five (25) frequently and can engage in unlimited walking, when the three (3) medical experts of record conclude: (A) (treating physician Dr. Lattuga) Calvo can occasionally (less than 1/3 of an 8 hour day) lift one (1) to five (5) pounds, could rarely or never lift greater than five (5) pounds, could rarely or never move his neck, and could sit up to two (2) hours straight but never more than four (4) hours in a day; (B) (Dr. Zaydon) Calvo can occasionally lift up to twenty (20) pounds and frequently lift up to ten (10) pounds; and (C) (Dr. Skeene) Calvo's neck pain is aggravated by lifting greater than five (5) pounds and Calvo has "moderate limitation for reaching and heavy lifting." Because it is determined that the administrative law judge's functional capacity

24

determination is not support by substantial evidence, this matter will be remanded to the administrative law judge for further conclusions not inconsistent with this Memorandum.

**CONCLUSION**

The Court's review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Specifically, the administrative law judge's Finding of Fact and Conclusion of Law number five (5) (residual functional capacity determination at Tr. 32) is not supported by the medical opinions and evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be vacated and the case will be remanded to the Commissioner for further proceedings.

An appropriate order will be entered.

Dated: November 14, 2012

_____
United States District Judge